708 A.2d 1126

**Kevin SIMPSON**

v.

**STATE of Maryland.**

**No. 1196, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

May 1, 1998.

Michael R. Braudes, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, David J. Taube, Staff Attorney and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for appellee.

Argued before MOYLAN and KENNEY, JJ., and PAUL E. ALPERT, Judge (retired), Specially Assigned.

PAUL E. ALPERT, Judge, Specially Assigned.

Kevin Simpson,[1] the appellant, was charged with possession with intent to distribute over 28 grams of heroin, possession with intent to distribute heroin in violation of Maryland Code, Article 27, § 286(f)(1)(iv), possession of heroin, conspiracy to distribute heroin, conspiracy to possess with intent to distribute heroin, and conspiracy to possess heroin. Prior to trial, appellant filed a motion to suppress physical evidence, contending that it was obtained by means of an illegal search, and a motion to disclose the identity of the confidential informant. Both motions were heard by The Honorable Albert Matriccia-

---

1. Appellant's true name is James Lee. Kevin Simpson was the name appellant gave to the police when he was arrested. At trial, the case was referred to as State of Maryland v. Kevin Simpson a/k/a James Lee.

ni, Jr., and denied. Appellant was convicted in a jury trial in the Circuit Court for Baltimore City (Albert Matricciani, Jr., J.) of all charges. He was sentenced to a five-year term of incarceration without the possibility of parole on the charge of possession with intent to distribute over 28 grams of heroin, a fifteen-year term of incarceration for possession with intent to distribute heroin, a fifteen-year term of incarceration for conspiracy to distribute heroin, and a fifteen-year term of incarceration for conspiracy to possess with intent to distribute heroin. All terms were to be served concurrently. No sentence was imposed for appellant's convictions of possession of and conspiracy to possess heroin.

Appellant presents us with six questions on appeal which we have reordered:

 I. Did the trial court make insufficient findings of fact on the issue of whether appellant lacked standing to complain of an unlawful search and seizure?

 II. Did the trial court err in requiring appellant to testify during the motion to suppress as to whether the heroin was his?

III. Did the trial court err in denying appellant's motion to disclose the identity of a confidential informant, or in failing to conduct an in-camera hearing on the matter?

 IV. Did the trial court impermissibly restrict the cross-examination of the primary investigating officer?

 V. Did the trial court err in permitting improper prosecutorial closing argument?

 VI. Did the trial court err in imposing certain of appellant's sentences?

We agree with appellant that his sentence for possession with intent to distribute heroin and one of his sentences for conspiracy must be vacated. In all other respects, we affirm the judgments of the circuit court.

**FACTS**

1. Facts presented at trial.

Officer Raymond Yost testified that he had learned from a confidential informant that a residence located at 1615 North Longwood Street in Baltimore City was being used as a "stash house" for drugs. As a result of that information, he conducted a covert surveillance of the premises on January 20, 1996, beginning at approximately 8:30 a.m. Officer Yost conducted the surveillance while sitting in an unmarked police car in the 1600 block of North Longwood Street. Other members of his unit were in another car a few blocks away. According to Officer Yost, at approximately 9:00 a.m., a male in a beige coat approached the house. Appellant exited the house, handed the individual a plastic bag containing small white objects, and accepted currency in return.

After the man in the beige coat left the residence, he was stopped by an unidentified uniformed patrol officer. Officer Yost did not know the uniformed officer and did not hear the conversation between the uniformed officer and the man in the beige coat. He noticed, however, that as a result of the conversation, the man became upset. The man turned around and walked toward the residence under surveillance. Officer Yost believed that the man might warn those in the house that the police were nearby. Concerned that the drugs might be removed from the stash house, Officer Yost decided that, despite the lack of a warrant, the surveillance team should make an immediate entry into the residence.[2]

Upon entering the residence, Officer Yost and Officer Sean Kapfhammer, another member of the surveillance team, entered a second floor bedroom. They encountered appellant and Cherese Rogers in that room. Rogers was in bed, and appellant was standing at the foot of the bed. According to Officer Yost, gel caps and cash were lying on the floor of the room. The officers arrested appellant and Rogers and seized

---

2. The record does not indicate whether this individual did attempt to return to the residence.

the gel caps and money. When the gel caps and money were counted, it was learned that the officers had seized 1,700 gel caps and $2,059 in cash from the room. The gel caps were subsequently tested and found to contain heroin.

2. Facts relating to the Motion to Suppress.

Prior to trial, appellant filed a motion to suppress the drugs and money found in the bedroom. The State contended that appellant did not have standing to contest the lawfulness of the search of the bedroom. A hearing was held on the motion. The following testimony occurred at that hearing.

Cherese Rogers testified that she had lived at 1615 North Longwood Street for a couple of months prior to January 20, 1996. She reported that she shared the room with her boyfriend, who was not appellant. Her uncle, Kenneth Steele, was the owner of the property. On the morning of January 20th she had made an agreement with Antoine "Little Butt" that he could count money in her room. He was going to pay her to let him do so. Appellant came to her room with a bag of money and drugs pursuant to that agreement.

On cross-examination, Rogers acknowledged that her uncle, Kenneth Steele, owned the house and that she did not pay rent for the premises. She reported that appellant did not reside at the premises; that he did not keep property at the premises; that he did not have a key to the premises; that he did not have the right to exclude others from the premises; that he was not allowed to remain in the house when she or Steele were not there; and that January 20th was the first time appellant had been to the residence. She further testified that her room had a door, and that, when the police came into the bedroom, the door was "almost shut."

Rogers testified that the bag appellant had brought was next to a chair when the police entered the room. The police turned the bag over, and money and drugs fell out. Rogers and appellant were then arrested.

Kenneth Steele testified that he was the owner of the house at 1615 North Longwood Street. According to Steele, appel-

lant had visited Rogers a couple of times previously. Steele reported that he told appellant that Rogers could not have company after 11:00 p.m. and that no one was permitted to spend the night.

Steele testified that appellant did not reside at the property or rent a room at the property; that he did not sleep at the premises; that he did not have a key to the premises; that he did not receive mail or other deliveries at the premises; and that he was not related to anyone who resided at the property. Steele further testified that appellant had no right to exclude others from the premises and that he was not permitted to stay in the premises if no one was at home. According to Steele, appellant "did not have access to [any] of the rooms in the house."

John Gross, appellant's cousin, testified that appellant and Rogers did not have a "boyfriend and girlfriend" relationship. He reported that he was present when Rogers asked appellant for some money. Appellant gave her the money she requested. Gross also reported that he had been present on a couple of occasions when she had asked other men in the neighborhood for money.

Appellant testified that he had a conversation with Rogers several days before January 20th. During that conversation, Rogers had approached him and asked for money to buy her daughter diapers. She stated that she would have sex with him in return for the money. On the morning of January 20th, he went to Rogers's house to have sex with her. He had been there two or three times previously. Steele let him into the house that morning. He went into Rogers's room and shut the door. He saw that Rogers was sleeping. He tapped her and waited for her to wake up.

During cross-examination, appellant testified that he had not brought the bag containing drugs and money into Rogers's room that morning. In fact, he denied any knowledge of the bag.

The trial court ruled that appellant had no standing to contest the lawfulness of the search of the premises at 1615

North Longwood Street or of the bag in which the heroin was found.

Additional facts will be set out as necessary to our resolution of the questions presented.

## DISCUSSION

### I.

We shall first address appellant's contention that the trial court made insufficient findings of fact to justify his ruling that appellant lacked standing to complain of the search at 1615 North Longwood Street.

Appellant filed a motion to suppress the evidence seized from Rogers's bedroom, based on Officer Yost's alleged violation of his Fourth Amendment rights. The State asserted that appellant lacked standing to contest the search. The trial court held a hearing to determine whether appellant did have standing. Appellant put forth six theories to support his position that he had standing to contest the search. After hearing the evidence, the trial court ruled that appellant did not have standing. In his decision, he stated:

To the extent that the State was seeking a hearing on standing and citing Thompson versus State, the Court grants [sic] that motion and, in fact, we did go forward and we took testimony from a number of witnesses, including the defendant on the issue of standing.

And we heard argument at some length from Mr. Boucher and Ms. Parsons and Mr. Lautz the last time we were in court on that issue, and having considered the defendant's motion to suppress the evidence which was seized from him on January 20, 1996, the Court must first address the issue of whether or not the defendant has standing to object to the seizure of that evidence.

And the Court is ruling today after reviewing all of that material, that the motion to suppress is denied. The defendant lacks the standing to object to the search and seizure that was performed in this case under the law and my

understanding of the facts as the law should be applied to them here.

■ Appellant contends that the trial court failed to set forth sufficient findings of fact to permit appellate review of his ruling. He asserts that this failure constituted reversible error. The State counters that, under any version of the facts which the trial court found, appellant lacked standing. It contends that the trial court was, therefore, not required to state his findings. We agree with the State.

■ Maryland Rule 4–252 governs pre-trial motions such as motions to suppress evidence. Section (f) of that Rule requires that those motions ordinarily be decided prior to trial and states that "[i]f factual findings are involved in determining the motion, the court shall state its findings on the record." If the trial court fails to make sufficient findings to permit appellate review, we must remand the case to the trial court for the limited purpose of making the necessary findings. *McMillian v. State,* 325 Md. 272, 296–97, 600 A.2d 430 (1992). Where, however, there is no dispute regarding the relevant facts, or if the trial court's resolution of an essential fact is implicit in its ruling, then no express findings are necessary. *Tu v. State,* 97 Md.App. 486, 494, 631 A.2d 110 (1993), *aff'd,* 336 Md. 406, 648 A.2d 993 (1994).

■ The burden is on the proponent of a motion to suppress evidence allegedly seized as a result of a constitutional violation to establish that he has standing to complain of a constitutional violation. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 130–31, 99 S.Ct. 421, 423–24, 58 L.Ed.2d 387, N.1 (1978); *Ricks v. State,* 312 Md. 11, 26, 537 A.2d 612, *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). In reviewing the trial court's ruling on standing, we make our own constitutional appraisal by reviewing the law and applying it to the peculiar facts of the particular case. *Oken v. State,* 327 Md. 628, 650, 612 A.2d 258 (1992), *cert. denied,* 507 U.S. 931, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993). When facts are in dispute, we accept them as found by the trial judge, unless

he is clearly erroneous in his judgment on the evidence before him, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* at 650–51, 612 A.2d 258; Maryland Rule 8–131(a). In determining the propriety of the trial court's ruling on standing, we look only to the record of the suppression hearing, not to the evidence presented at trial. *Gamble v. State,* 318 Md. 120, 125, 567 A.2d 95 (1989); *Joyner v. State,* 87 Md.App. 444, 451, 589 A.2d 1330 (1991).

In order for appellant to establish standing to contest the warrantless search of the premises or the property seized, appellant must show that he had a legitimate expectation of privacy in the premises or the property. *Rakas v. Illinois,* 439 U.S. at 143, 99 S.Ct. at 430. This requires "more than a subjective expectation of not being discovered." *Rakas v. Illinois,* 439 U.S. at 143, n. 12, 99 S.Ct. at 430, n. 12. Mere presence of a criminal defendant at the site of a search is insufficient to show that his rights were violated. *Rakas v. Illinois,* 439 U.S. at 143, 99 S.Ct. at 430; *Ricks v. State,* 312 Md. at 326. The individual contending that his expectation of privacy was violated must have had a subjective expectation of privacy, *Rawlings v. Kentucky,* 448 U.S. at 104, 100 S.Ct. at 2561, and that expectation must be one which society was prepared to recognize as reasonable. *Rakas v. Illinois,* 439 U.S. at 143–44, n. 12, 99 S.Ct. at 430, n. 12; *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). In *Joyner v. State,* 87 Md.App. at 451, 589 A.2d 1330, we discussed the elements that we had considered in determining whether an individual's expectation of privacy was reasonable. Those elements include:

the appellant's possessory interest in the premises; appellant's right to and duration of stay at the searched premises; whether appellant had a right to exclude others from access to the searched area; what precautions he took to maintain his privacy there; appellant's subjective expectation of privacy in the area searched; the location of the property at the time of the search; [and] ownership of the evidence seized . . . .

(Quoting *McMillian* v. State, 65 Md.App. 21, 32–33, 499 A.2d 192 (1985)).

In the present case, we conclude that implicit in the trial court's ruling was his finding that appellant was not the owner of the bag of drugs and money which appellant sought to suppress. Further, regardless of what testimony the trial court believed, we conclude that appellant's interest in the premises and the evidence seized was insufficient to establish standing to contest the validity of the search. We shall consider each of appellant's bases for standing in turn.

1. Appellant was initially charged with maintaining the premises at 1615 North Longwood Street as a common nuisance. This count was *nol prossed* during the hearing on the motion to suppress. Appellant contends that the fact that the State initially charged appellant with maintaining a common nuisance establishes a relationship between appellant and the searched premises. The State contends that the *nol pros* of the charge mooted this ground. We agree with the State.

The State also points out, correctly, that a defendant can no longer derive "automatic standing" from the charges against him. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). As noted *supra,* the burden of proof is on appellant to produce evidence to establish his standing. *Rawlings v. Kentucky,* 448 U.S. at 104, 100 S.Ct. at 2561; *Rakas v. Illinois,* 439 U.S. at 130–31, n. 1, 99 S.Ct. at 424, n. 1; *Ricks v. State,* 312 Md. at 26, 537 A.2d 612. The allegations in the State's pleadings are not evidence. *United States v. Zermeno,* 66 F.3d 1058, 1062 (9th Cir.1995). Accordingly, appellant could not use the State's having charged him with maintaining a common nuisance as a basis for determining that he had standing.

2. As a result of her arrest on January 20, 1996, Rogers had pled guilty to conspiracy to distribute heroin prior to the suppression hearing. She had also agreed to testify against appellant as part of the agreement. In the proceeding relative to her guilty plea, Rogers had stated that she and

appellant had an agreement that appellant was going to stash drugs in her room. Appellant argues that, by accepting the plea agreement, the State was bound by what Rogers had said during that proceeding. He asserts that Rogers's testimony established that he had a reasonable expectation of privacy in the premises. We find no merit in appellant's argument. We will not consider here whether Rogers's testimony would support a finding that appellant had a reasonable expectation of privacy in her room. We simply note that we know of no authority that would support appellant's contention that the State is bound in one proceeding by the testimony that an individual has given in a separate proceeding as part of a plea agreement, and appellant has provided us with none.

3. Appellant's next contention is that Rogers's testimony established that the bag and money were his, thus giving him standing.[3] Appellant himself testified, however, that he was in Rogers's room only to have sexual relations with her and that he had not brought the bag of drugs with him. Because, as explained below, appellant had no legitimate expectation of privacy with respect to the premises, the only way in which the trial court could find standing was to find that appellant had sufficient possessory interest in the bag to support a reasonable expectation of privacy with respect to its contents. Accordingly, implicit in the trial court's ruling that appellant did not have standing was his finding that the bag did not belong to appellant.[4] Consequently, the trial court's decision did not need to be spelled out. *Tu v. State*, 97 Md.App. at 494, 631 A.2d 110.

---

**3.** In fact, Rogers's testimony was that appellant brought the bag into her room, not that he owned its contents.

**4.** Rogers testified at the suppression hearing that the bag's contents fell out when it was turned over. The State argues that, from that testimony, the trial court could infer that the bag was open and that appellant had no reasonable expectation of privacy in it. The record, however, indicates that the bag was a paper bag, and we do not believe the State's argument has merit.

Further, the trial court's finding that appellant had no reasonable expectation of privacy with respect to the bag was required by appellant's testimony that he had no knowledge of it. We will not permit appellant to say now that he had a reasonable expectation of privacy in the bag. "Appellant cannot in one breath disclaim interest in the bag[ ] and in the next breath complain that his rights are infringed by the seizure and search of [that bag]." *Lingner v. State,* 199 Md. 503, 506–07, 86 A.2d 888 (1952). *See also Eagan v. Calhoun,* 347 Md. 72, 698 A.2d 1097 (1997) (party who conceded in affidavit that he had committed an intentional act would not be permitted to take a contrary position in the same case).

■ 4. Appellant next contends that because he went to Rogers's room to have sexual relations, and because society believes that sexual relations should be carried out in private, he therefore had a subjective expectation of privacy in Rogers's bedroom sufficient to confer standing. The State contends that appellant's connection with the room, even if appellant were to be believed, was insufficient to allow him sufficient expectation of privacy to have standing. We agree with the State.

In the present case, appellant had been to the premises, at most, a few times before the date of the search. Regardless of whether the trial court believed Rogers or appellant, appellant had been in Rogers's room only a short time before the police entered and was not expected to stay for a prolonged period. Appellant did not store any personal belongings in the room. He did not have a key to the premises. He had no right to be on the premises without Rogers or Steele present and he had no right to exclude others, including Rogers's live-in boyfriend, from the room. We do not believe that appellant's connection to the premises was sufficient to establish a legitimate expectation of privacy.

In *Owens v. State,* 322 Md. 616, 589 A.2d 59, *cert. denied,* 502 U.S. 973, 112 S.Ct. 452, 116 L.Ed.2d 470 (1991), the Maryland Court of Appeals considered whether an individual who was not a guest of the owner of the premises, who did not

have a key, could lawfully enter only with the permission of the owner, and could not exclude others, had a legitimate expectation of privacy in the premises. The Court concluded that he did not. Although the defendant in *Owens* was not on the premises at the time of the search, cases from other jurisdictions support our conclusion that appellant's connection with the searched premises are insufficient to establish that he had a legitimate expectation of privacy. *See United States v. McNeal*, 955 F.2d 1067 (6th Cir.), *cert. denied*, 505 U.S. 1223, 112 S.Ct. 3039, 120 L.Ed.2d 908 (1992)(guest who had no clothes or toothbrush on the premises was no more than a casual, transient visitor); *United States v. Garcia*, 741 F.2d 363 (11th Cir.1984)(visitor who was not an owner or lessee and who stored no personal belongings on the premises did not have sufficient "significant and current interest" in the premises to establish standing); *State v. Conklin*, 249 Neb. 727, 545 N.W.2d 101 (1996)(occasional guest who had no ability to exclude others from the premises had no reasonable expectation of privacy).

In *Burks v. State*, 96 Md.App. 173, 194, 624 A.2d 1257 (1993), this Court held that the defendant lacked standing to object to the warrantless entry of a motel room occupied by the defendant and two kidnapping victims where the defendant forced one of the victims to rent and pay for the motel room.

Furthermore, Gross testified that appellant and Rogers had no ongoing "boyfriend and girlfriend" relationship. The evidence, rather, established that if appellant did expect to have sexual relations with Rogers, he was soliciting prostitution. Given the absence of any other indicia of standing in and to the premises, as discussed above, the appellant's mere subjective expectation of privacy, standing alone, was not one that society is prepared to accept as reasonable.

■ 5. Appellant's next contention is that his arrest was unlawful and that the heroin was seized as the fruit of his arrest. He contends that he had standing to protest the arrest and the resulting seizure. The State contends, howev-

er, that appellant was not arrested until after the search and that, therefore, the seizure of the drugs were not the fruit of his arrest. We agree with the State. There was no evidence presented to suggest that appellant was arrested prior to the seizure of the drugs. *Compare Ott v. State,* 325 Md. 206, 224–26, 600 A.2d 111 (defendant had standing to contest a search incident to an unlawful arrest), *cert. denied,* 506 U.S. 904, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992); *In re Albert S.,* 106 Md.App. 376, 384–86, 664 A.2d 476 (1995)(defendant had standing to challenge a search incident to an unlawful seizure of his person).

6. Appellant's final contention on the issue of standing is that he had an expectation of privacy in Rogers's room because he and his associate had leased it as a place for counting money. We do not believe, however, that stashing drugs in another person's room gives the person who stashes the drugs an expectation of privacy that society regards as reasonable. *See United States v. Jacobsen,* 466 U.S. 109, 122–23, 104 S.Ct. 1652, 1661–62, 80 L.Ed.2d 85, 100–01 (1984); *United States v. Hicks,* 978 F.2d 722, 723–24 (D.C.Cir.1992). Further, as noted previously, appellant had no control over the premises. The fact that one is a "paying guest" does not, in itself, give one a sufficient expectation of privacy to confer standing. *See United States v. McNab,* 775 F.Supp. 1 (D.D.C., 1991)(passenger in automobile did not gain standing to complain of illegal search simply because he paid the driver for the ride). *Compare Bates v. State,* 64 Md.App. 279, 494 A.2d 976 (1985)(passenger in taxi-cab, who had right to choose the destination and the route of the cab, and to exclude others, had sufficient control of the vehicle to confer standing).

In addition, the evidence showed that, at best, appellant had an agreement with Rogers. Both Rogers and Steele testified, however, that Steele owned the premises. Steele testified that he did not permit visitors after 11:00 p.m. and that he did not permit overnight guests. Thus, it was Steele, not Rogers, who had primary control of the premises. Although the evidence established that Rogers could have visitors, appellant

failed to present any evidence that Rogers had authority to "lease" the premises. In fact, Steele testified that appellant had not rented a room in the house.

We hold that appellant lacked standing to complain that his Fourth Amendment rights had been violated by the search. Thus, the trial court's failure to particularize its findings in this case does not require a remand.

## II.

■ Appellant's next contention is that the trial court erred in requiring him to answer when the prosecutor, during the suppression hearing, asked him whether the drugs found by the police belonged to him.

Cherese Rogers testified that appellant had come to her room for the purpose of counting money there and that he had brought the bag with drugs and money with him. Appellant testified on direct examination that he had gone to Rogers's room to have sexual relations with her. On cross-examination, the prosecutor asked appellant whether he had brought the bag of money and drugs to Rogers's room. Appellant objected, arguing that the question was beyond the scope of direct examination and that he had a Fifth Amendment privilege with respect to anything beyond the scope of direct examination. The State countered that the question was relevant to the reason why appellant went to Rogers's room. The trial court overruled the objection and appellant testified, under threat of being held in contempt of court, that he knew nothing about the bag.

Appellant first contends that the question was improper because it was beyond the scope of cross-examination.

■ The scope of cross-examination is within the sound discretion of the trial court and ordinarily will not be disturbed unless there is an abuse of discretion. *Oken v. State,* 327 Md. at 669, 612 A.2d 258. Although the scope of cross-examination is generally limited to the subjects raised on direct examination, within that limit a cross-examination

should be permitted to elucidate, modify, explain, contradict, or rebut testimony given during direct examination. *Smallwood v. State*, 320 Md. 300, 307, 577 A.2d 356 (1990). It is also proper to cross-examine as to facts or circumstances inconsistent with testimony. *Id.*

In the present case, appellant testified on direct examination that he was in Rogers's room because he expected to have sex with her. The question asked by the prosecutor was relevant to modify or contradict that testimony. Accordingly, it was proper cross-examination.

Appellant also contends that the question of whether appellant owned the drugs was improper because it was not relevant to the issue of standing. At trial, however, appellant objected on the grounds that the question violated his privilege against self-incrimination and that it was beyond the scope of direct examination, not because appellant's response was irrelevant to the issue of standing. Counsel had, in fact, previously told the trial court that ownership of the bag was relevant to one of appellant's theories of standing. Since appellant's argument that his response was not relevant to the issue of standing was not presented to the trial court, we will not consider it on appeal. *von Lusch v. State*, 279 Md. 255, 263, 368 A.2d 468 (1977).

## III.

▮▮▮ Appellant's next contention is that the trial court erred in failing to order disclosure of the identity of the person who provided information about the premises at 1615 North Longwood Street to the police.

Officer Yost received information on January 19, 1996, from an unnamed informant that the house at 1615 North Longwood Street was a "stash house." That information led to the officer's surveillance of the house. Prior to trial, appellant moved to require the State to disclose the identify of the informant. He argued that the confidential informant could be a witness or accessory and could have competent information. He argued that the informant might have seen him at

the house, "using a key, sleeping overnight, staying there perhaps in the room even, who knows," or that the informant might have seen him stashing drugs in the house, which might help to establish standing. Appellant also argued that if the informant knew that Steele's house was a stash house, he or she might know that appellant was not connected to that house. The State argued against disclosure. It proffered that the informant was not an accessory or a witness to the crime. The State's Attorney contended that the only material facts were those that occurred on the day appellant was arrested and that the informant had no material information about that occurrence. The trial court denied appellant's motion for disclosure, stating that speculation as to the materiality of the informant's testimony was insufficient to tip the balance in favor of disclosure.

Appellant contends that the trial court committed error by failing to require the State to disclose the informant's identity. We disagree.

■■ The State's privilege to withhold from disclosure the identity of its informers has long been recognized. *Brooks v. State,* 320 Md. 516, 522, 578 A.2d 783 (1990). The State's interest in maintaining the anonymity of its informers is, however, necessarily circumscribed by the defendant's interest in a fair trial. *Id.* at 522, 578 A.2d 783. As the United States Supreme Court explained in *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957):

The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

■■■ The privilege ordinarily applies where the informer is a mere "tipster," who supplied a lead to law enforcement officers but is not present at the time the crime is committed.

*Warrick v. State,* 326 Md. 696, 701, 607 A.2d 24 (1992). The key element, however, is the materiality of the informer's testimony to the determination of the accused's guilt or innocence, balanced against the State's interest in protecting the identity of the informer. *Warrick v. State,* 326 Md. at 701, 607 A.2d 24. Further, the burden rests with the defendant to establish by a preponderance of the evidence that information about an informant is necessary to the proper preparation of his defense. Mere conjecture about the relevancy of an informant's testimony is insufficient to compel disclosure. *Jones v. State,* 56 Md.App. 101, 109, 466 A.2d 895 (1983).

In the present case, appellant failed to establish that information from the confidential informant would have been helpful to his defense. The issue presented to the jury was whether the drugs belonged to appellant. Even if the informant had been familiar with the stash house, as counsel suggested might be the case, his testimony that he had not seen appellant at the house previously would not rebut the observations of the officers. As the informant was not an accessory in the drug operation, he would not have material information on appellant's role, or lack of a role, in the operation. Accordingly, the trial court did not err in denying appellant's motion to compel disclosure of the State's confidential informant.

## IV.

Appellant next contends that the trial court erred in sustaining the prosecutor's objection to a question he asked Officer Yost during cross-examination.

It was appellant's position that Officer Yost invented the story about the man in the beige coat having been stopped by a uniformed officer, thus alerting him to the presence of police in the area. He theorized that Officer Yost invented the story to create an exigent situation and allow him to make a warrantless entry into the residence at 1615 North Longwood Street. At trial, appellant sought to impeach the officer's credibility by suggesting that the officer fabricated the story.

The appellant was permitted to establish during cross-examination that Officer Yost knew that he could not enter the house without a warrant unless an emergency existed. The following then occurred:

[DEFENSE COUNSEL]: Now, in your experience, the many, many search warrants you've done and the many cases you've been involved with, when you go into a house let's say without a warrant and let's say the entry is determined to be illegal into the house, the result is that usually the case gets dismissed because the evidence recovered from that house is suppressed, isn't that what happens?

The prosecutor objected to the question and requested a bench conference. Defense counsel argued that she was trying to create a motive for the officer's fabrication of the exigent circumstances. The trial court sustained the objection and explained:

If I understand—I understood that you go too far when you get into the issue about whether the case gets thrown out. Not in every case.

[DEFENSE COUNSEL]: No.

THE COURT: And if they can come to all kinds of different conclusions, that is, he's not qualified to and his credibility on the observations that he made—you're going too far. I'm going to sustain the objection.

Appellant contends that the question was proper and that the trial court erred in sustaining the prosecutor's objection. We disagree.

A criminal defendant is entitled to ask questions on cross-examination regarding matters which affect the witnesses' bias, interests, or motive to falsify. *Smallwood v. State,* 320 Md. at 306, 577 A.2d 356. The right to cross-examine is not without limits, however. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation

that is repetitive or only marginally relevant." *Id.* at 307, 577 A.2d 356 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986)). The trial court "must balance the probative value of an inquiry against the unfair prejudice that might inure to the witness." *Ware v. State,* 348 Md. 19, 68, 702 A.2d 699 (1997)(quoting *State v. Cox,* 298 Md. 173, 178, 468 A.2d 319 (1983)). Furthermore, questions that assume facts not in evidence are objectionable. *Tirado v. State,* 95 Md.App. 536, 550, 622 A.2d 187, *cert. denied,* 331 Md. 481, 628 A.2d 1067 (1993).

In the present case, the trial court permitted appellant to inquire as to whether Officer Yost knew the law. He did not preclude appellant from asking Officer Yost whether he knew of the possible consequences of an unlawful entry. The question that appellant asked, however, was confusing. It suggested that the result of an unlawful search was always that the evidence would be suppressed and that Officer Yost knew this. Furthermore, the question implied that Officer Yost had previously made illegal entries into houses and had had cases dismissed for that reason. Thus, the jury could have taken the question as suggesting that Officer Yost's judgment and credibility were suspect even if they believed that the officer testified truthfully in the present case.

The question was also improper because there was no evidence that Officer Yost had previously made illegal entries into a house and had had cases dismissed for that reason. Thus, the question assumed facts not in evidence.

Any of the above reasons would have justified the trial court's sustaining the prosecutor's objection. Thus, the trial court acted within its discretion in doing so.

## V.

Appellant's penultimate contention is that the trial court erred in permitting allegedly improper prosecutorial argument.

As noted, appellant's real name is James Lee. He was tried under the name of Kevin Simpson, the name he gave to the police when he was arrested. At trial, Officer Yost and Officer Kapfhammer, referred to appellant as "Kevin Simpson." Cherese Rogers, however, consistently referred to appellant as "Jamie." Appellant's cousin, John Gross, testified that appellant's real name was James Lee.

During his closing argument, the prosecutor discussed Rogers's credibility. The following occurred:

[PROSECUTOR]: She pled guilty to conspiracy to distribute heroin and she pled guilty to that conspiracy involving the Defendant Kevin Simpson also known as James Lee, and remember she finally referred to him as Jamie. She doesn't know him as Kevin Simpson, the name he gave to the police.

Defense counsel objected to that statement. The objection was overruled. Appellant now argues that the argument was improper because there was no evidence that he gave a false name to a police officer. He contends that the trial court committed prejudicial error in overruling his objection.

We disagree. A determination of whether any impropriety occurred in the closing argument rests largely within the control and discretion of the presiding judge. *Grandison v. State,* 341 Md. 175, 225, 670 A.2d 398 (1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996). "[A]n appellate court should in no case interfere with that judgment unless there has been an *abuse of discretion* by the trial judge of a character likely to have injured the complaining party." *Stevenson v. State,* 94 Md.App. 715, 729, 619 A.2d 155 (1993)(quoting *Wilhelm v. State,* 272 Md. 404, 413, 326 A.2d 707 (1974))(emphasis in original).

"While arguments of counsel are required to be confined to the issues in the cases on trial, the evidence and fair and reasonable deductions therefrom, and to arguments of opposing counsel, generally speaking, liberal freedom of speech should be allowed.... [Counsel] may discuss the facts proved or admitted, assess the conduct of the parties,

and attack the credibility of witnesses ..." *Wilhelm v. State,* 272 Md. at 413, 326 A.2d 707.

 In the present case, appellant was tried as "Kevin Simpson." The police officers who testified referred to him by that name. Appellant's cousin, however, testified that appellant's real name was James Lee. Rogers consistently referred to appellant as "Jamie." Thus, it was clear from the evidence that the police knew appellant by a pseudonym. We believe the jury could reasonably have inferred that appellant told the police officers that his name was Kevin Simpson. Further, given that the jury knew that appellant had a pseudonym, we see nothing prejudicial in informing the jury that he acquired it by giving a false name to the police when he was arrested. The trial court acted within its discretion in overruling appellant's objection.

## VI.

Appellant's final contention is that his conviction and sentence for possession with intent to distribute heroin should be merged into his sentence for possession with intent to distribute over 28 grams of heroin. The State agrees. We do also.

 In Maryland, the usual test for determining whether two offenses arising out of the same act merge is the required evidence test, also known as the *Blockburger* [5] test. *Williams v. State,* 323 Md. 312, 316, 593 A.2d 671 (1991); *Snowden v. State,* 321 Md. 612, 616, 583 A.2d 1056 (1991). This test "focuses upon the elements of each offense; if all the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter." *Snowden v. State,* 321 Md. at 617, 583 A.2d 1056. If the offenses merge and are thus deemed to be one crime, separate sentences for each offense are prohibited. *Snowden v. State,* 321 Md. at 617, 583 A.2d 1056.

5. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

 The elements of possession with intent to distribute over 28 grams of heroin are the same as that of possession with intent to distribute heroin, with the added element that the amount to be distributed is 28 or more grams. Maryland Code Ann., Article 27, § 286(f)(1)(iv). *See Anderson v. State,* 89 Md.App. 712, 726, 599 A.2d 861 (1991). Therefore, appellant's sentence for possession with intent to distribute heroin must be merged with that for possession with intent to distribute the greater amount.

 Appellant also contends that his conviction and sentence for one of the conspiracies should be vacated. Again, the State agrees. "It is well settled in Maryland that only one sentence can be imposed for a single common law conspiracy no matter how many criminal acts the conspirators have agreed to commit." *Tracy v. State,* 319 Md. 452, 459, 573 A.2d 38 (1990). The evidence established only one conspiracy. Accordingly, one of the sentences for appellant's convictions of conspiracy must be vacated.

**SENTENCE FOR POSSESSION WITH INTENT TO DISTRIBUTE HEROIN AND ONE SENTENCE FOR CONSPIRACY VACATED; JUDGMENTS AFFIRMED IN ALL OTHER RESPECTS.**

**COSTS TO BE PAID FIVE–SIXTHS BY APPELLANT AND ONE–SIXTH BY THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY.**