859 A.2d 1100

**Kevin C. ALSTON**

v.

**STATE of Maryland.**

**No. 1350, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Oct. 5, 2004.

Amy E. Brennan (Nancy S. Forster, Public Defender, on the brief), Baltimore, for Appellant.

Celia Anderson Davis (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: DAVIS, DEBORAH S. EYLER and SHARER, JJ.

DEBORAH S. EYLER, J.

A jury in the Circuit Court for Baltimore City convicted Kevin C. Alston, the appellant, of unlawful possession of a regulated firearm by a person previously convicted of a felony; unlawful possession of a regulated firearm by a person previously convicted of a misdemeanor carrying a statutory penalty of more than two years; and wearing and carrying a handgun. The court imposed a sentence of five years in prison without the possibility of parole for the felon-in-possession conviction; a consecutive two-year prison term for the misdemeanor-based possession conviction; and a concurrent two-year prison sentence for the wearing and carrying a handgun conviction.

On appeal, the appellant presents the following three questions, which we have reordered and rephrased:

I. Did the motion court err in denying the appellant's motion to suppress the handgun from evidence?

II. Must the appellant's sentence of five years in prison without the possibility of parole, under Article 27, section 449(e), be vacated because when he committed the offense and was sentenced Md.Code (2002), section 5–622 of the Criminal Law Article ("CL") proscribed the same conduct but carried only a maximum penalty of five years in prison with the possibility of parole?

III. Should the appellant's misdemeanor-based possession conviction and sentence be vacated in light of his felon-in-possession conviction and sentence?

For the following reasons, we answer "No" to Questions I and II and "Yes" to Question III. Accordingly, we shall vacate

the appellant's conviction and sentence for unlawful possession of a regulated firearm by a person previously convicted of a misdemeanor carrying a statutory penalty of more than two years, and otherwise affirm the judgments of the circuit court.

## FACTS AND PROCEEDINGS

The events in this case took place on October 10, 2002. Prior to that date, the appellant had been convicted of distribution of a controlled dangerous substance ("CDS"), in violation of Md.Code (1957, 1996 Repl. Vol.) Article 27, section 286, which is a felony.[1] He also previously had been convicted of a misdemeanor carrying a statutory penalty of more than two years.

At about 11:15 p.m. on October 10, 2002, Baltimore City Police Sergeant Stanley Noland and three other "plainclothes" officers were on duty in an unmarked police car in the unit block of West Talbot Street in Baltimore City. Sergeant Noland was driving. The officers were familiar with the area and knew it as one in which illegal drugs are sold on the street.

The officers saw several people standing and walking around on the sidewalk in front of 54 West Talbot Street. Two of the people waved for the officers' vehicle to pull over to the curb. Based on prior experience, Sergeant Noland believed that the people were going to offer to sell drugs to the officers.

Sergeant Noland stopped the vehicle at the curb and he and the other officers got out of the car. When they donned police identification badges, the two people who had signaled to them fled. A third person, later identified as the appellant, remained standing on the sidewalk in front of 54 West Talbot Street. As the officers watched, the appellant reached into his waistband and pulled out a semi-automatic handgun. Still

---

1. Article 27, section 286 was recodified under sections 5–602 to 5–609, 5–612 and 5–613 of the Criminal Law Article, effective October 1, 2002.

holding the handgun, he turned and ran inside 54 West Talbot Street, through the open front door.

Sergeant Noland and Officers James Jones and Chris Kazmarek ran into the building after the appellant. (Officer Wayne Weaver ran around the side of the building to the backyard.) Officer Jones went upstairs to the second floor apartment and Officer Kazmarek entered the first floor apartment. Sergeant Noland, still in the first floor entryway, heard someone running down another flight of stairs, in a common area of the house, from the second floor to the basement. After the footsteps reached the basement, it was quiet for 35 to 40 seconds. The footsteps resumed, and were heard again, running up the stairs. Sergeant Noland opened a door to the common area stairway and intercepted the appellant, who no longer was holding the handgun.

The appellant was placed under arrest and searched. The handgun was not on his person. Sergeant Noland and Officer Kazmarek went downstairs into the basement of the house and performed a "cursory search" for the handgun, using flashlights. After a few minutes, they found, stashed on an open ceiling rafter, a handgun identical to the one they had seen the appellant holding. The officers seized the handgun and determined that it was fully loaded. The officers also discovered a woman, later identified as Christy Dean, asleep on a makeshift bed.

The appellant was charged criminally, in the Circuit Court for Baltimore City. He filed a motion to suppress the handgun from evidence, arguing that it had been seized in violation of his Fourth Amendment rights. The court denied the motion. The case proceeded to trial the next day. At the outset, the parties stipulated that the appellant "ha[d] been previously convicted of crimes that would prohibit his possession of a regulated firearm."

Sergeant Noland testified for the State about the events of October 10, 2002, as we have recited them. The State also called Officers Jones and Kazmarek, who corroborated Ser-

geant Noland's testimony. The defense rested without presenting any evidence.

In light of the parties' stipulation about the appellant's prior convictions, with respect to the two counts of possession, the jurors merely were asked to decide whether the appellant did or did not possess the firearm on the date in question. They found that he did. The jurors also found the appellant guilty of wearing and carrying a handgun. We shall discuss sentencing in depth in addressing Question II.

## DISCUSSION

### I.

As noted, the appellant moved to suppress the handgun from evidence on Fourth Amendment grounds. At the suppression hearing, the State asserted that the appellant lacked standing to contest the police entry into 54 West Talbot Street and their search of the basement of the premises and seizure of the handgun.

The appellant testified on his own behalf on the standing issue. According to the appellant, on the day in question, a man named "Jerry," whose last name he did not know, was living in the second floor apartment of 54 West Talbot Street, and "a guy" whose name he did not know at all was living in the first floor apartment. Christy Dean was renting the basement of the dwelling from "Jerry." The appellant had known Dean "for a pretty long time." They had an "intimate" relationship. The appellant did not know how long Dean had been renting the basement of 54 West Talbot Street, but he had been going there to see her for a "couple of months." The appellant "spent the night" at Dean's apartment "from time to time." He "sometimes" stayed there for the whole night. He did not keep any of his belongings there. He did not have a key. Dean would lend him her key sometimes "[i]f [he] went to the store or something." He did not receive mail or have a telephone at 54 West Talbot Street. His "permanent address" was on Furnace Branch Road in Glen Burnie, where he had lived for about 16 years.

The State called Sergeant Noland. His suppression hearing testimony was as we have summarized his trial testimony above.

At the close of the hearing, the court denied the appellant's suppression motion on two grounds. First, it concluded that the appellant did not have standing to raise a Fourth Amendment violation. The court found that the appellant was merely an occasional overnight visitor of Dean and that he did not have a legitimate expectation of privacy in the premises. Second, the court concluded that, even if the appellant had standing, there was no Fourth Amendment violation because the warrantless entry into 54 West Talbot Street and search of the basement and seizure of the handgun were justified by exigent circumstances.

On appeal, the appellant contends the motion court's rulings were in error. He also contends that the search of the basement could not be justified as a search incident to valid arrest—an argument the State raised below but was not addressed by the motion court. The State responds that the motion court correctly concluded that the appellant did not have Fourth Amendment standing and, alternatively, that exigent circumstances justified the entry, search, and seizure; and that the search of the basement also properly could be upheld as incident to a valid arrest.

For the reasons we shall explain, we conclude that the suppression motion properly was denied on the ground of lack of standing. Therefore, we need not address the appellant's Fourth Amendment violation contention.

 Our review of the trial court's decision on a motion to suppress evidence under the Fourth Amendment is based solely on the record of the suppression hearing. *State v. Green*, 375 Md. 595, 607, 826 A.2d 486 (2003); *Cartnail v. State*, 359 Md. 272, 282, 753 A.2d 519 (2000). We view the evidence in the light most favorable to the party who prevailed on the suppression motion. *State v. Rucker*, 374 Md. 199, 207, 821 A.2d 439 (2003); *Williams v. State*, 372 Md. 386, 401, 813 A.2d 231 (2002). In considering the evidence on which a

suppression motion is based, we extend great deference to the judge's fact-finding, determinations about witness credibility, and weighing of the evidence. *In re Tariq A–R–Y,* 347 Md. 484, 488, 701 A.2d 691 (1997); *Farewell v. State,* 150 Md.App. 540, 562 n. 5, 822 A.2d 513 (2003). When facts are in dispute, we accept the factual findings of the motion judge unless they are clearly erroneous. *Oken v. State,* 327 Md. 628, 650, 612 A.2d 258 (1992). With respect to the ultimate determination whether there has been a constitutional violation, we make our own independent appraisal by reviewing the law and applying it to facts presented in a particular case. *Carter v. State,* 367 Md. 447, 457, 788 A.2d 646 (2002); *Simpson v. State,* 121 Md.App. 263, 276, 708 A.2d 1126 (1998).

■■■ The Fourth Amendment proscribes unreasonable searches and seizures by government agents. U.S. Const. amend. IV; *see United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Fourth Amendment coverage only applies, and hence a violation only may be asserted, when the person asserting the violation had a reasonable expectation of privacy in the area invaded at the time of the search. *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). A reasonable expectation of privacy is one society is prepared to recognize as reasonable. *Id. See also Bond v. United States,* 529 U.S. 334, 338, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000); *Rakas v. Illinois,* 439 U.S. 128, 143–44, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). This requires "more than a subjective expectation of not being discovered." *Rakas, supra,* 439 U.S. at 143 n. 12, 99 S.Ct. 421; *Simpson, supra,* 121 Md.App. at 277, 708 A.2d 1126. Whether a defendant has a legitimate expectation of privacy in the area invaded at the time of the search is determined by considering the "totality of the circumstances." *Joyner v. State,* 87 Md.App. 444, 450, 589 A.2d 1330 (1991).

■■■ The burden is on the proponent of a motion to suppress evidence on Fourth amendment grounds to prove what is sometimes called "standing"—that he had a reasonable

expectation of privacy in the premises or the property. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Laney v. State*, 379 Md. 522, 545, 842 A.2d 773 (2004). As explained above, the motion court in this case found that the appellant did not show that he had standing to assert a Fourth Amendment violation.

On appeal, the appellant contends that he had a reasonable expectation of privacy in Dean's basement apartment at 54 West Talbot Street because he had the status of an overnight guest of Dean. He relies on *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), for support.

In *Olson*, the defendant had been staying in a duplex apartment rented by a friend, who was away. The police obtained information that the defendant had been the getaway driver in an armed robbery and murder. Without obtaining a warrant, they went to the duplex, entered it, and arrested the defendant, who was hiding in a closet. Soon after his arrest, the defendant made inculpatory statements. After he was charged, the defendant moved to suppress his statement, on the ground that it was obtained as a consequence of his illegal arrest. The trial court held that the defendant did not have a reasonable expectation of privacy in the duplex apartment and therefore did not have standing to raise a Fourth Amendment violation. On appeal after conviction, the state supreme court reversed and remanded, holding that the defendant had a sufficient interest in the premises to assert a Fourth Amendment violation, and that the warrantless arrest in fact violated the Fourth Amendment.

The Supreme Court affirmed. On the issue of standing, the Court held that the defendant's "status as an overnight guest [was] alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." 495 U.S. at 96–97, 110 S.Ct. 1684. The Court explained that an overnight guest's legitimate expectation of privacy in the premises in which he is staying does not depend upon whether he has a legal interest in the premises that gives him the right to exclude others or determine who may

enter; a key with which to come and go; receives mail at the location; or stays there regularly. His status as an overnight houseguest itself gives him a legitimate expectation of privacy in his host's home.

In *Olson*, the defendant's status at the time of the search as an overnight guest of the duplex renters was established factually; the decisional issue was the legal significance of that status for purposes of Fourth Amendment coverage. 495 U.S. at 93, 96, 110 S.Ct. 1684. As explained, the Court adopted a *per se* rule that a person who is an overnight guest in the premises at the time of the search has a reasonable expectation of privacy in the premises.

In this case, by contrast, there was no factual finding that the appellant was an overnight guest of Dean at the time of the search. The appellant did not testify that he was an overnight guest of Dean that night. His testimony was that "from time to time" he was an overnight guest of Dean: that is, sometimes he stayed overnight with her; more often he visited her without spending the night; and for periods he did not visit her at all. Certainly, that testimony did not compel a factual finding that the appellant occupied the status of an overnight guest of Dean on October 10, 2002.

We read the motion court's ruling as including an implicit factual finding that the appellant did *not* occupy the status of an overnight guest under *Olson;* and we cannot say that finding was clearly erroneous. The appellant's testimony did not offer any factual detail about his connection to 54 West Talbot Street on the night in question. He did not testify that he had been inside the apartment visiting Dean at any time on the day or evening in question or that he was planning to go inside the apartment or to stay with Dean that night. As discussed above, it was the appellant's burden to adduce evidence showing his status *vis-à-vis* the premises. *Joyner v. State, supra,* 87 Md.App. at 450, 589 A.2d 1330. It is telling that the appellant did *not* testify that he even visited Dean or was inside her apartment on October 10, 2002, giving only general information about his visiting habits.

The question then is whether an occasional overnight guest of an apartment renter who has no belongings in the apartment, no key to the apartment, enters the apartment while in flight from the police, is not visiting the renter at the time of the search, but has an intimate relationship with the renter, has a legitimate expectation of privacy in the renter's apartment.

We agree with the State that *Simpson v. State*, 121 Md. App. 263, 708 A.2d 1126 (1998), is helpful authority on this question. In that case, a woman had been living in a room on North Longwood Street in Baltimore City for several months. According to the defendant, he had been to the room two or three times previously. On the day in question, he went there to have sex with the woman. She had agreed to have sex with him in exchange for money. Another occupant of the house let him in and he went to the woman's room, entered, and waited for her to wake up. While he was waiting, the police entered the home and recovered illegal drugs from the room.

This Court held that the defendant did not have standing to raise a Fourth Amendment violation, because he did not have a reasonable expectation of privacy in the woman's room, notwithstanding that he was visiting her for the purpose of having sexual relations. We noted that the defendant had visited the premises only a few times previously; was in the room only a short time before the date of the search; did not store any personal belongings there; did not have a key to the premises; had no right to be there without the woman or other occupant present; and had no right to exclude others from the room.

The appellant's status at the time of the arrest was akin to that of the defendant in *Simpson*. Again, although at times he spent the night with Dean in her apartment, there was no evidence that he was doing so that night. He was not inside Dean's apartment when the police encountered him; he had no key; he kept no belongings there; and he did not have a right to be present on the premises without Dean's or "Jerry's" presence. In addition, there was no evidence that Dean

let him in her apartment or consented to his entry. Rather, the evidence was that she was asleep.

Cases from other states and from federal courts militate against the appellant's having standing in the case at bar. In *Hill v. United States*, 664 A.2d 347 (D.C.1995), the evidence showed that the defendants "sometimes" stayed at an apartment, were good friends with the tenant, and had stayed there overnight as recently as the night before the night of the search. On the night of the search, however, the defendants arrived at the apartment slightly before 3:00 a.m., minutes before the police entered, and were found fully clothed, feigning sleep. There was no evidence that they had planned to spend the night at the apartment. They also did not have a key. The court held that the defendants were not overnight guests and did not have a reasonable expectation of privacy in the apartment.

In *Lewis v. United States*, 594 A.2d 542 (D.C.1991), the same court held that a party guest who had arrived at an apartment during the course of the night, and was asleep in a bedroom when police arrived at 2:00 p.m. the next afternoon, did not have standing. The guest did not produce any evidence that he had been invited by the renter to stay overnight, or had attended the party with the plan to do so.

In *United States v. McNeal*, 955 F.2d 1067 (6th Cir.1992), the Sixth Circuit Court of Appeals held that a defendant found hiding in an apartment during a police search did not have a reasonable expectation of privacy in the premises. Although the defendant was there at the invitation of the renter, he had no clothes or toothbrush or any other belongings on the premises from which one could infer that he had intended to spend the night on the evening of the search, and he had never spent the night there before. The court found that he was but a casual, transient visitor.

In *Rankin v. State*, 57 Ark.App. 125, 942 S.W.2d 867 (1997), the Arkansas Court of Appeals held that a defendant who frequently stayed overnight at his girlfriend's apartment and left prescriptions and medicine bottles there did not have a

reasonable expectation of privacy in the apartment when he was not an overnight guest when the search occurred. In fact, the defendant was not inside the apartment when the search was conducted. There was no evidence that he maintained control over the apartment. Similarly, in *State v. Cortis,* 237 Neb. 97, 465 N.W.2d 132 (1991), the Supreme Court of Nebraska held that a guest who had stayed overnight "[a] couple times" at his girlfriend's apartment, but had not done so for two or three weeks and was not present in the apartment when the search took place, did not have a reasonable expectation of privacy in the apartment.

In cases in which courts have found that an occasional overnight guest had Fourth Amendment standing, there were facts, not present in this case, tying the guest to the premises: for example, the guest's having left personal effects in the apartment; possessing a key; or having permission from the renter to invite or exclude others. *See, e.g., United States v. Fields,* 113 F.3d 313, 317–21 (2d. Cir.1997) (guest who could and did bring guests to the residence, with whom he drank beer and watched television, possessed a key, had used the premises 40 to 50 times, and could come and go even in the householder's absence had a legitimate expectation of privacy in the residence); *United States v. Pollard,* 215 F.3d 643, 647–48 (6th Cir.2000) (guest who left personal belongings in the home where he occasionally spent the night, sometimes ate meals with the family during his visits, and was allowed to stay even if the residents were not present had a legitimate expectation of privacy in the home); *State v. Lovig,* 675 N.W.2d 557, 564 (Iowa 2004) (guest who stayed overnight on average of three nights a week, was frequently at the apartment to babysit, and left personal effects at the apartment had a legitimate expectation of privacy in the premises).

Returning to the case at bar, under the totality of the circumstances test, and accepting the non-clearly erroneous factual findings of the motion court, the appellant did not have a reasonable expectation of privacy in Dean's apartment when the police searched it and retrieved the handgun. The appellant sometimes was an overnight guest of Dean, but there was

no evidence that he was visiting her on the night of October 10, 2002, or that he intended to spend that night in her apartment. Beyond the history of the appellant's spending the night with Dean "from time to time," there was no evidence connecting him to the premises from which one reasonably could infer that he would have had a subjective expectation of privacy there. He did not have a key; he had no personal effects at the premises; and there was no evidence that he had been given permission to invite or exclude guests.

Moreover, the surrounding circumstances were not such as to allow an objectively reasonable expectation of privacy. The appellant's encounter with the police began on the street, in a public place; and his conduct—brandishing a handgun—gave the police probable cause to think that a crime had been committed in their presence, and on that basis to arrest the appellant. The appellant entered 54 West Talbot Street to flee the police, and the police therefore had a right to enter the building to effectuate the arrest. *United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *United States v. Jones,* 204 F.3d 541, 543 (4th Cir.2000). The appellant's "visit" to Dean's apartment was momentary and, as the police correctly surmised, merely for the purpose of disposing of the handgun, *i.e.,* an item of evidence.

The appellant's status as an occasional overnight guest of Dean who did not have the present status of an overnight guest and entered Dean's apartment in the course of fleeing from the police, to deposit evidence, did not give him an objectively reasonable expectation of privacy in Dean's apartment: that is, one that society is willing to recognize. Accordingly, he did not have standing to challenge the admission of the handgun into evidence on Fourth Amendment grounds, and the court properly denied his suppression motion.

## II.

 The appellant's felon-in-possession conviction was under Article 27, section 445(d)(1)(ii), which proscribes posses-

sion of a regulated firearm by a person who "[h]as been convicted of . . . [a]ny violation classified as a felony in this State."[2] The appellant's prior CDS distribution conviction underlay his section 445(d)(1)(ii) conviction. The court sentenced the appellant, under section 449(e), to five years' imprisonment, without the possibility of parole. That statute states, in pertinent part:

A person who was previously convicted of a crime of violence as defined in § 441(e) of this article or convicted of a violation of § 286 or § 286A of this article, and who is in illegal possession of a firearm as defined in § 445(d)(1)(i) and (ii) . . ., is guilty of a felony and upon conviction shall be imprisoned for not less than 5 years, no part of which may be suspended and the person may not be eligible for parole.

Section 445(d)(1)(i) proscribes the possession of a regulated firearm by a person who has been convicted of a crime of violence.

The appellant contends that his sentence under section 449(e) for the felon-in-possession conviction must be vacated, for two reasons.

First, he argues that, under the plain language of section 449(e), the mandatory minimum five years without suspension or eligibility for parole sentence applies only when a person has been convicted of possessing a regulated firearm when previously convicted of a crime of violence *and* a felony (sections 445(d)(1)(i) *and* (ii)); and here, his previous CDS distribution conviction, while a felony, was not a crime of violence. The appellant acknowledges that this Court recently addressed and rejected that argument in *Stanley v. State*, 157 Md.App. 363, 851 A.2d 612 (2004). For the reasons explained in the majority opinion in *Stanley*, it was not necessary that the appellant previously have been convicted of a crime of

---

2. Effective October 1, 2003, the statutory provisions governing the sale, transfer, and possession of regulated firearms were repealed and recodified. Article 27, section 445(d)(1)(ii) is now codified in section 5–133(c)(1)(ii) of the Public Safety Article. Article 27, section 449(e) is now codified in section 5–133(c)(2) of the Public Safety Article.

violence, in addition to his CDS distribution felony, for the mandatory minimum penalty in section 449(e) to apply.

Second, the appellant argues that, under the rule of lenity, he should not have been sentenced under section 449(e) because, on the date of the crime, in addition to section 445(d)(1)(ii), section 5–622 of the Criminal Law Article also prohibited the possession of a regulated firearm by a person previously convicted of a drug-related felony; but section 5–622 authorized a less severe penalty than the penalty under section 449(e).[3]

CL section 5–622 appears in the Controlled Dangerous Substances, Prescriptions, and Other Substances title of the Criminal Law article and provides, in relevant part, at subsections (b) and (c):

A person may not possess, own, carry, or transport a [regulated] firearm if that person has been convicted of: (1) a felony under this title. . . . A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $10,000 or both.

The appellant maintains that, because he could have been convicted under CL section 5–622 for the same conduct for which he was convicted under section 445(d)(1)(ii) of Article 27, and a conviction under CL section 5–622 would have carried a prison sentence of no more than five years, without a non-eligibility for suspension or parole requirement, under the "rule of lenity," he could not be sentenced to the mandatory minimum five years without suspension or non-eligibility for parole under section 449(e). Rather, his sentence could be no more than that authorized under CL section 5–622.

The rule of lenity is a principle of statutory construction providing, in its most general application, that, in cases of ambiguity, doubts shall be resolved in favor of crimi-

---

3. The statutory provisions governing Controlled Dangerous Substances and Firearm Crimes were contained in Md.Code Article 27, section 291A until October 1, 2002, when they were repealed and reenacted without substantive change as CL section 5–622.

nal defendants. *Gargliano v. State*, 334 Md. 428, 437, 639 A.2d 675 (1994). It frequently is applied in the context of merger of offenses for sentencing purposes, when the defendant has been convicted of two offenses (either both statutory or one statutory and one a derivative of common law) that do not merge under the required evidence test, but there is " 'doubt or ambiguity as to whether the legislature intended that there be multiple punishments for the same act or transaction[.]' " *Holbrook v. State*, 364 Md. 354, 373, 772 A.2d 1240 (2001) (quoting *Williams v. State*, 323 Md. 312, 321, 593 A.2d 671 (1991) (quoting *White v. State*, 318 Md. 740, 744, 569 A.2d 1271 (1990) (internal quotation marks omitted) (quoting *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) (quoting *Bell v. United States*, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955))))) (citing *Monoker v. State*, 321 Md. 214, 223, 582 A.2d 525 (1990)).

▮ The purpose of the rule of lenity is to prohibit a court from " 'interpret[ing] a ... criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended.' " *Monoker, supra*, 321 Md. at 222, 582 A.2d 525 (internal citations omitted). Recently, in *Melton v. State*, 379 Md. 471, 842 A.2d 743 (2004), the Court of Appeals applied the rule of lenity in interpreting section 449(e). Finding the language of the statute ambiguous as to the proper unit of prosecution, the Court construed the statute narrowly, in favor of criminal defendants, holding that the unit of prosecution "is the prohibited act of illegal possession of a firearm and that the statute does not support multiple convictions based on several prior qualifying offenses where there is only a single act of possession." 379 Md. at 486, 842 A.2d 743.

The rule of lenity does not apply when there is no ambiguity to resolve, however, as the United States Supreme Court explained in *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), a highly instructive case for our purposes. In *Batchelder*, the defendant, a previously-convicted felon, was convicted of receiving a firearm in inter-

state commerce, under a section of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 ("Omnibus Act"), and was sentenced to a five-year maximum term authorized for violation of that statute. His conduct also violated a similar provision of Title VII of the Omnibus Act, violation of which carried a lesser maximum term. He argued, *inter alia*, that, under the rule of lenity, because his conduct violated both statutes, he only could be sentenced to the maximum penalty under the more lenient statute.

The Supreme Court rejected the defendant's argument, holding that, when two statutes proscribe the same conduct and apply different penalties, the prosecutor has unfettered discretion (if he is not discriminating against any class of defendants) to choose between the statutes. So long as the provisions "unambiguously specify the activity proscribed and the penalties available upon conviction," 442 U.S. at 123, 99 S.Ct. 2198, the rule of lenity has no application. The Court, through Justice Marshall, stated:

> Although this principle of construction [the rule of lenity] applies to sentencing as well as substantive provisions, in the instant case there is no ambiguity to resolve. Respondent unquestionably violated § 922(h) and § 924(a) unquestionably permits five years' imprisonment for such a violation. That § 1202(a) provides different penalties for essentially the same conduct is no justification for taking liberties with unequivocal statutory language. By its express terms, § 1202(a) limits its penalty scheme exclusively to convictions obtained under that provision. Where, as here, "Congress conveyed its purpose clearly, ... we decline to manufacture ambiguity where none exists." *United States v. Culbert* [,] 435 U.S. [371,] 379, 98 S.Ct. 1112, 55 L.Ed.2d 349 [(1978)].

*Id.* at 121–22, 99 S.Ct. 2198 (citations omitted).[4]

The *Batchelder* analysis applies by analogy to the case at bar. When the crime was committed, the State could have

---

4. The Court further held that the statutory provisions at issue were not void for vagueness, did not violate equal protection or due process, and

prosecuted the appellant, based on the same conduct, for violating CL section 6–522, which was part of the Controlled Dangerous Substances laws, enacted by 1991 Md. Laws, ch. 613; or for violating section 445(d)(1)(ii), subject to an enhanced penalty under section 449(e), which was enacted in 2000, as part of the Responsible Gun Safety Act, 2000 Md. Laws, ch. 2. There is no ambiguity as between these provisions, and hence the rule of lenity is not triggered. The State had discretion to prosecute the appellant under the provision carrying the stiffer penalty.

## III.

As noted above, in addition to his felon-in-possession conviction under section 445(d)(1)(ii), the appellant was convicted of violating section 445(d)(1)(iii), which proscribes possession of a regulated firearm by a person who has been convicted of a misdemeanor carrying a statutory penalty of more than two years. The appellant's prior misdemeanor conviction for transporting a handgun in a vehicle underlay his section 445(d)(1)(iii) conviction.[5] The court sentenced the appellant to two years' imprisonment for this crime, consecutive to the sentence imposed on the felon-in-possession conviction.

The appellant's final contention is that, under *Melton, supra*, 379 Md. 471, 842 A.2d 743, his conviction and sentence for unlawful possession of a regulated firearm by a person previously convicted of a misdemeanor carrying a statutory penalty of more than two years must be vacated. The State agrees, and so do we.

In the case at bar, there was but a single act of handgun possession by the appellant. For that reason, his conviction

did not impermissibly delegate to the executive branch the legislature's responsibility to fix criminal penalties. 442 U.S. at 123–26, 99 S.Ct. 2198.

5. Although the record is not clear on this point, it appears that the misdemeanor conviction was under Article 27, section 36B(b), now codified as CL section 4–203.

and sentence based on a violation of section 445(d)(1)(iii) must be vacated.

**CONVICTION AND SENTENCE FOR UNLAWFUL POSSESSION OF A REGULATED FIREARM BY A PERSON PREVIOUSLY CONVICTED OF A MISDEMEANOR CARRYING A STATUTORY PENALTY OF MORE THAN TWO YEARS VACATED; JUDGMENTS OTHERWISE AFFIRMED. COSTS TO BE PAID ONE–HALF BY THE APPELLANT AND ONE–HALF BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

Dissenting opinion by DAVIS, J.

DAVIS, Judge, dissenting.

For the reasons set forth in my dissenting opinion in *Stanley v. State,* 157 Md.App. 363, 851 A.2d 612 (2004), I respectfully dissent to the holding of the Majority as to Issue II.