JAMES R. EYLER, Judge.
 

 Charles Stanley, appellant, was convicted by a jury in the Circuit Court for Baltimore City of possessing a firearm after having been previously convicted of a crime of violence and discharging a firearm within the City of Baltimore. The trial court sentenced appellant to a term of five years’ incarceration without the possibility of parole for the firearm possession and to a concurrent sentence of time served for the conviction of discharging a firearm. Appellant presents two questions on appeal:
 

 
 *366
 
 I. Did the trial court err in admitting evidence that appellant was previously convicted of a crime of violence?
 

 II. Did the trial court impose an illegal sentence?
 

 Perceiving no error, we affirm the judgments of the circuit court.
 

 FACTS AND LEGAL PROCEEDINGS
 

 At approximately 3:00 on the morning of October 30, 2001, Baltimore City Police Officer Joe DiCandaloro went to 4114 Haywood Avenue in Baltimore City in response to a call for discharging of a firearm. He approached appellant, who was at that address, and asked if he had a weapon inside the house. Appellant told the officer that he had a handgun inside his house, but that he had dropped it into the heating duct. Appellant took the officer into the basement, where the officer ripped out a piece of the heating duct and recovered a loaded .32-caliber handgun. The gun had four rounds of ammunition and two empty shell cases in the cylinder. Appellant told the officer that he had fired the gun twice outside his bedroom window to see if the gun was operational.
 

 A true-test copy of appellant’s prior conviction for second degree assault was admitted into evidence without objection.
 

 On cross-examination, Officer DiCandaloro testified that he initially charged appellant with unlawful firing of a firearm in the City of Baltimore and possession of a regulated firearm after having been convicted of a misdemeanor assault, in violation of an
 
 ex parte
 
 order. The officer acknowledged that he initially charged appellant with a misdemeanor for the gun possession, but that appellant’s current charge was a felony.
 

 Appellant sought jury nullification.
 
 [1]
 
 He testified that he was 57 years old, that he was retired from General Motors,
 
 *367
 
 where he had worked for thirty years, and that he had three grown children.
 

 Appellant said that he bought a handgun and, after drinking, he wanted to see if the gun worked. He said that he fired the gun out of his back window, then threw it in the corner. He recounted that the police officer came the next morning and he decided to give up the gun because “I didn’t want nobody to get hurt -with it and I didn’t want the gun anymore.” He related that, when the officer asked about the gun, he decided “here’s my chance to do the right thing, and [he] told him the truth.” He said that he told the officer he had fired the gun, but was sorry, and that he did not want to hurt anyone.
 

 Appellant discussed a previous conviction for second degree assault. He related that his son “was trying to put [him] out of the house.” He said that his son was “a big guy,” and that he had not hit his son but “just had him by the legs.” Appellant explained, with regard to the
 
 ex parte
 
 order, that he was supposed to stay out of his house. He also told the jury, however, that he and his wife were back together and “everything [was] fine.”
 

 On cross-examination, the prosecutor elicited that the incident in which he was convicted of second-degree assault on his son was separate from the assault conviction based on violation of an
 
 ex parte
 
 order.
 

 
 *368
 
 DISCUSSION
 

 I.
 

 Prior to trial, the following occurred:
 

 THE COURT: Do you have to offer the prior conviction?
 

 [PROSECUTOR]: Absolutely.
 

 THE COURT: That is what I thought you did, that is my understanding.
 

 [PROSECUTOR]: In this case, since we are trying this case alone.
 

 THE COURT: Now how much do you think people can get into what it really was?
 

 [PROSECUTOR]: I do not think they are supposed to get into what it was, it does not matter.
 

 THE COURT: It is going to be—it is going to read off the record as what?
 

 [PROSECUTOR]: Assault, second-degree assault.
 

 THE COURT: Second-degree assault.
 

 THE COURT: Yes, which is a statutory crime of violence.
 

 THE COURT: All right, and which is a legal—
 

 [DEFENSE COUNSEL]: See, I do not understand—
 

 THE COURT:—dispute in terms of what it means in the statute, but that is the law.
 

 [PROSECUTOR]: That is why I kind of object to that question, because—
 

 THE COURT: What was the date of it.
 

 [PROSECUTOR]: I think it was 1996.
 

 THE COURT: Is it that recent? I thought it was older, but maybe I—
 

 [DEFENSE COUNSEL]: I think that—oh, well, second degree assault was added in 1996 because that is when they broke assault into degrees. Before, it was just generally assault and battery common law. But that part, the thing that defines crime of violence, that has been around since, I think the 1970’s.
 

 
 *369
 
 [PROSECUTOR]: Actually, it might be even later than that, 1999—1999.
 

 THE COURT: What were the facts? Are you going to try to offer the facts of that assault?
 

 [DEFENSE COUNSEL]: It was domestic violence. I don’t know.
 

 [PROSECUTOR]: Because there are three really that are connected to it. I am only offering one because that is all I need in my statutory verdict.
 

 THE COURT: I mean, there are cases that clearly say, as I recall from reading them, that you are allowed to do that and there is not reversible error.
 

 [PROSECUTOR]: That is the only way to prove the case in this situation.
 

 A short while later, the issue was revisited.
 

 [PROSECUTOR]: It is an essential element of the State’s proving and it is case law.
 

 THE COURT: Right, and I think that is the case law.
 

 [PROSECUTOR]: Right.
 

 [DEFENSE COUNSEL]: I know, but I do not see how anybody can get a fair trial if that is what the law is.
 

 THE COURT: Look, I am happy to tell you—
 

 [DEFENSE COUNSEL]: I know, I know.
 

 THE COURT: You have reserved (sic) the objection.
 

 Appellant contends that this Court should recognize plain error and reverse appellant’s convictions because at the time of his trial, this Court had decided
 
 Carter v. State,
 
 145 Md.App. 195, 802 A.2d 460 (2002), but that case was reversed by the Court of Appeals after appellant’s trial.
 
 [2]
 
 He asserts that, in
 
 Carter,
 
 “this Court held that the State had a right to disclose to the jury both the fact that the prior conviction was for a crime of violence and the name of the offense of which the defendant had [been] previously convicted.” He argues that, “[w]ith this Court’s
 
 Carter
 
 acting as the last word on this
 
 *370
 
 issue, it is unlikely that the trial judge would have been willing to give relief.”
 

 Plain Error
 

 Plain error is error which “vitally affects a defendant’s right to a fair and impartial trial.”
 
 Clermont v. State, 348
 
 Md. 419,
 
 433, 704
 
 A.2d 880 (citations omitted),
 
 cert. denied,
 
 523 U.S. 1141, 118 S.Ct. 1849, 140 L.Ed.2d 1098 (1998);
 
 Richmond v. State,
 
 330 Md. 223, 236, 623 A.2d 630 (1993) (citation omitted). An appellate court should take cognizance of unpreserved error only in those instances which are “compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.”
 
 Richmond,
 
 330 Md. at 236, 623 A.2d 630 (citation omitted). There is no “fixed formula for determining when we should exercise our discretion.”
 
 Rubin v. State,
 
 325 Md. 552, 588, 602 A.2d 677 (1992) (citation omitted). The Court of Appeals has stated, “we do expect that the appellate court would review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention,” and has observed that such factors “are ordinarily inconsistent with circumstances justifying an appellate court’s intervention’ under plain error.”
 
 Rubin, 325
 
 Md. at 588, 602 A.2d 677 (internal quotations omitted).
 

 Carter v. State
 

 In
 
 Carter,
 
 Antwon Leroy Carter was charged with possession of a regulated firearm by one previously convicted of a crime of violence, possession of a regulated firearm by a person under the age of twenty-one, and unlawful discharge of a firearm within the City of Baltimore.
 
 Carter,
 
 145 Md.App. at 200, 802 A.2d 460. Carter requested that the trial court not inform the jury that he had been previously convicted of a crime of violence.
 
 Id.
 
 at 200-02, 802 A.2d 460. When the trial court rejected that request, Carter offered to stipulate that he had been convicted of a crime of violence to prevent the State from offering evidence that his prior conviction was for rob
 
 *371
 
 bery with a deadly weapon.
 
 Id.
 
 at 202, 802 A.2d 460. That offer, too, was rejected.
 
 Id.
 

 On appeal, Carter contended that the trial court erred in permitting the State to disclose to the jury evidence of his prior conviction for robbery with a deadly weapon, asserting that “[o]nce the defense indicated that it was willing to stipulate to the existence of that conviction, the State had no legitimate need for the evidence.”
 
 Id.
 
 at 203, 802 A.2d 460. Carter also argued that the trial court’s refusal to exclude evidence of the prior conviction constituted an abuse of that discretion because, “[gjiven the defense counsel’s willingness to concede the existence of the prior conviction, it was simply unnecessary to apprise the jury of this prejudicial element.”
 
 Id.
 
 at 203-04, 802 A.2d 460.
 

 After reviewing case law from other jurisdictions, we concluded that it was not error for the trial court to allow the State to inform the jury that a defendant had previously been convicted of a crime that disqualified him from possessing a gun.
 
 Id.
 
 at 220, 802 A.2d 460.
 

 We then considered whether the trial court erred in permitting the State to disclose the
 
 nature
 
 of the prior conviction to the jury, in addition to the
 
 fact
 
 of the prior conviction.
 
 Id.
 
 at 224, 802 A.2d 460. We discussed the United States Supreme Court’s opinion in
 
 Old Chief v. United States,
 
 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), involving an appeal of a conviction for possession of a firearm by a person previously convicted of a felony. Prior to trial, Old Chief moved to preclude the government from mentioning any prior convictions at his trial, except to state that he “had been convicted of a crime punishable by imprisonment exceeding one (1) year.”
 
 Id.
 
 at 175, 117 S.Ct. 644. Old Chief also agreed to stipulate to the fact of that conviction.
 
 Id.
 
 The trial court refused to require the government to join in the stipulation.
 
 Id.
 
 at 177, 117 S.Ct. 644. Old Chief was convicted, and his appeal ultimately reached the United States Supreme Court. That Court concluded that the trial court erred in not requiring the
 
 *372
 
 government to accept Old Chiefs stipulation. The Court noted:
 

 [T]here can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant. That risk will vary from case to case, for the reasons already given, but will be substantial whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning.
 

 Old Chief,
 
 519 U.S. at 185, 117 S.Ct. 644. The Court went on to say, “The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant’s admission.”
 
 Id.
 
 at 190-91, 117 S.Ct. 644.
 

 In
 
 Carter,
 
 we recognized the danger with which the Supreme Court was concerned. “It is well established in Maryland that evidence of a defendant’s prior crime can tempt the jury into convicting the defendant because he has committed bad acts in the past rather than because the evidence establishes guilt beyond a reasonable doubt.”
 
 Carter,
 
 145 Md.App. at 229-30, 802 A.2d 460. After reviewing the Supreme Court’s decision in
 
 Old Chief,
 
 we concluded:
 

 We, too, agree with the majority in
 
 Old Chief
 
 that when a defendant’s legal status is an element of the crime, and the defendant offers to stipulate and disclose to the jury that legal status, the trial court should perform a Md. Rule 5-403 balancing test before admitting evidence of the name or nature of the previous conviction.
 

 Id.
 
 at 229, 802 A.2d 460.
 

 Analyzing the specifics of Carter’s case, we concluded that the trial court’s decision to permit the state to inform the jury that Carter was previously convicted of robbery with a deadly weapon did not constitute an abuse of discretion.
 
 Id.
 
 at 234-35, 802 A.2d 460.
 

 The Maryland Court of Appeals granted
 
 certiorari. See Carter v. State,
 
 371 Md. 261, 808 A.2d 806 (2002). It agreed
 
 *373
 
 with this Court that the jury should be told of the prior conviction.
 
 Carter v. State,
 
 374 Md. 693, 714, 824 A.2d 123 (2003). It disagreed, however, that admission of the name or nature of the prior conviction should fall within the trial court’s discretion. After discussing decisions in other jurisdictions, the Court concluded:
 

 We see no meaningful difference between
 
 Old Chief; Brown
 

 [3]
 

 ; Lee,
 

 [4]
 

 and the case before us. In all of those cases, the prosecution needed to prove only that the defendants were felons to satisfy the prior conviction element. Maryland courts, like their Federal, Florida, and Kansas counterparts, permit the exclusion of evidence if “its probative value is substantially outweighed by the danger of unfair prejudice.” Maryland Rule 5-403. We agree with
 
 Old Chief
 
 that the name and nature of a previous conviction, although “technically relevant,” “addresse[s] no detail in the definition of the prior-conviction element that would not [be] covered by the stipulation or admission [of that element].” Therefore, we, too, are of the opinion that, when requested by the defendant in a criminal-in-possession case under Maryland Code, Article 27, Section 445, the trial court must accept a stipulation or admission that the defendant was convicted of a crime that qualifies under the criminal-in-possession statute. We hold also that, in such situations, the name or nature of the previous conviction should not be disclosed to the jury.
 

 Carter,
 
 374 Md. at 720-21, 824 A.2d 123 (internal and end footnotes omitted). The Court held that,
 

 when the defendant admits or the parties stipulate to the previous-conviction element of a charge under Section 445(d), the trial judge should inform the jury that the defendant admits that he or she has been convicted of a crime for which he or she is prohibited from possessing a regulated firearm under the law. The judge should not
 
 *374
 
 describe the previous conviction with any more particularity or by using the categories of crimes under Section 445.
 

 Id.
 
 at 722, 824 A.2d 123.
 

 This Case
 

 Although this Court’s decision in
 
 Carter
 
 did not require the trial court to accept a stipulation, it did require that the trial court perform a balancing test before admitting evidence of the name and nature of the prior conviction. Appellant did not offer a stipulation, nor did he request that the trial court perform a balancing test and tell the jury only that he had been convicted of a prior disqualifying crime.
 

 Appellant asserts that “[bjefore the trial began, the parties discussed the issue and the defense attorney objected to the jury learning this information.” A look at the transcript reveals, however, that the parties were discussing the fact of a prior conviction, not whether its name or nature should be disclosed. There is nothing that suggests that the trial court would have been unsympathetic to appellant’s request.
 
 [5]
 
 Although appellant complains that “it was disclosed to the jury that appellant had previously been convicted of second degree assault on more than one occasion,” it was defense counsel who elicited information about the second conviction. And,
 
 *375
 
 although appellant is aggrieved that the trial court instructed the jury that second degree assault was a crime of violence, the trial court asked defense counsel whether she “object[ed] to the portion of this instruction that identifies assault as a crime of violence,” and she said she did not.
 

 We disagree with appellant’s assertion that this case is like
 
 Squire v. State,
 
 280 Md. 132, 368 A.2d 1019 (1977). In
 
 Squire,
 
 the Court of Appeals recognized plain error when the trial court propounded an instruction four days after the United States Supreme Court’s decision in
 
 Mullaney v. Wilbur,
 
 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), which was contrary to that decision. The
 
 Squire
 
 Court was “well satisfied that the failure to object did not result from trial tactics or inadvertence, but from a [not unfounded] belief of counsel [ ] that the instruction was in accord with Maryland and federal law.”
 
 Squire,
 
 280 Md. at 136, 368 A.2d 1019.
 

 Here, Maryland case law at the time of appellant’s trial required that the trial court perform a balancing test before disclosing the name and nature of a defendant’s prior conviction to the jury. Appellant offered no stipulation, nor did he request a balancing test. Considering the lack of a request for a stipulation, defense counsel’s eliciting the underlying facts of appellant’s prior convictions and defense counsel’s jury nullification argument, we cannot say that appellant’s failure to stipulate or ask for a balancing test was not the result of a strategic trial decision. We decline to consider whether the trial court committed plain error in admitting evidence of appellant’s prior convictions.
 

 II.
 

 Appellant’s second contention is that the trial court erred in sentencing him to a term of 5 years without parole for the illegal possession of a firearm. He asserts that the plain meaning of Md.Code (1957, 1996 RepLVol., 2001 Cum.Supp.), Article 27, § 449(e) requires that he be convicted of both a
 
 *376
 
 crime of violence and a felony before he can be sentenced to a term of years without parole.
 

 Section 449(e) provides:
 

 (e) Illegal possession of firearm with certain previous convictions.—A person who was previously convicted of a crime of violence as defined in § 441(e) of this article or convicted of a violation of § 286 or § 286A of this article, and who is in possession of a firearm as defined in § 445(d)(1)(f) and (ii) of this article, is guilty of a felony and upon conviction shall be imprisoned for not less than 5 years, no part of which may be suspended and the person may not be eligible for parole. Each violation shall be considered a separate offense.
 

 Section 445(d)(1)
 
 [6]
 
 provides:
 

 (d) A person may not possess a regulated firearm if the person:
 

 (1) Has been convicted of:
 

 (i) A crime of violence;
 

 (ii) Any violation classified as a felony in this State;
 

 (iii) Any violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years; or
 

 (iv) Any violation classified as a common law offense where the person received a term of imprisonment of more than 2 years.
 

 In Price
 
 v. State,
 
 378 Md. 378, 835 A.2d 1221 (2003), the Court of Appeals considered whether Price’s conviction of statutory daytime housebreaking was a “crime of violence” within the meaning of § 449(e). Although it concluded that it was not, and that § 449(e) therefore did not apply to Price, it noted:
 

 Petitioner does not raise, and we do not decide, any question with respect to the second requirement of § 449(e). Therefore, we do not consider whether § 449(e)’s mandatory
 
 *377
 
 sentencing imperative requires a conviction under both § 445(d)(1)® and (ii), as the plain language indicates. Although Price was convicted pursuant to only § 445(d)(1)(h), we assume for purposes of this case alone that this was sufficient to satisfy the second requirement of § 449(e), and that the only issue before us is whether the first requirement, that his prior crime fall within § 441(e), was satisfied.
 

 Price,
 
 378 Md. at 384, n. 4, 835 A.2d 1221. The Court again noted this issue in
 
 Melton v. State,
 
 379 Md. 471, 842 A.2d 743 (2004). There, the defendant had been convicted of both a felony and a crime of violence, so, again, the construction of § 449(e) did not matter. Again, however, the Court of Appeals noted the “possible problem in the language of § 449(e).”
 
 Id.
 
 at 487, 842 A.2d 743.
 

 Appellant’s prior conviction was for second-degree assault, which is a crime of violence as defined in Article 27, § 441(e), but is not a felony. Md.Code, (1957, 1996 RepLVol.), Article 27, § 12A(b). Therefore, if § 449(e) is applicable only to persons previously convicted of both a felony and a crime of violence, appellant is not subject to the penalties provided.
 

 Melton
 
 sets out the rules of statutory construction:
 

 In interpreting statutes, this Court has said that “the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature.” A court should first examine the plain language of the statute when attempting to ascertain the legislative intent. If the statutory language is unambiguous when construed according to its ordinary and everyday meaning, then this Court “will give effect to the statute as it is written,” and we will not add or delete words from the statute.
 

 Only if the statutory language is ambiguous will this Court look “beyond the statute’s plain language in discerning the legislative intent.”
 

 Melton,
 
 379 Md. at 476, 842 A.2d 743 (internal and end citations omitted). Ambiguity exists within a statute when
 
 *378
 
 there are “two or more reasonable alternative interpretations of the statute.”
 
 Price,
 
 378 Md. at 387, 835 A.2d 1221.
 

 In addition, § 449(e) is an enhanced penalty statute. [A]n enhanced penalty statute, is highly penal and must be strictly construed so that the defendant is only subject to punishment contemplated by the statute. When doubt exists regarding the punishment imposed by a statute, the rule of lenity instructs that a court “not interpret a ... criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended.”
 

 Melton,
 
 379 Md. at 489, 842 A.2d 743 (citations omitted).
 

 Nonetheless,
 

 we do not view the plain language of a statute in a vacuum. The plain meaning rule of construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body. The Court will look at the larger context, including the legislative purpose, within which statutory language appears.
 

 Derry v. State,
 
 358 Md. 325, 336, 748 A.2d 478 (2000) (citations omitted).
 

 Thus,
 

 “ ‘[w]e are not constrained ... by ... “the literal or usual meaning” of the terms at issue.’ ” Rather, we must “interpret the meaning and effect of the language in light of the objectives and purposes of the provision enacted.” Furthermore, we should construe the statute in a manner that results in an interpretation “reasonable and consonant with logic and common sense.”
 

 Degren v. State,
 
 352 Md. 400, 418, 722 A.2d 887 (1999)(internal and end citations omitted).
 

 “The plain language can not be viewed in isolation; rather, the entire statutory scheme must be analyzed as a whole.”
 
 Outmezguine v. State,
 
 335 Md. 20, 41, 641 A.2d 870 (1994).
 
 *379
 
 “We seek to read statutes ‘so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory.’ ”
 
 State v. Pagano,
 
 341 Md. 129, 134, 669 A.2d 1339 (1996).
 

 Although the “plain meaning” of § 449(e) suggests that it applies to persons who have been convicted of both a crime of violence and a felony, an examination of the statute in context and in conjunction with the statutory scheme makes clear that that was not the legislative intent.
 

 Interpreting the statute as appellant suggests would require us to render a portion of the statute superfluous and would produce an illogical result. Section 449(e) applies to “a person who was previously convicted of a crime of violence as defined in § 441(e)” or of a violation of Article 27 § 286 or § 286A. Article 27 §§ 286 and 286A prohibit various drag crimes. None of the offenses prohibited by those statutes is a “crime of violence as defined in § 441(e).” It would be illogical for the legislature specifically to have listed §§ 286 and 286A in § 449(e) if it intended that the section apply only to persons who have previously been convicted of both a felony and a crime of violence. In addition, § 445(d)(1) does not prohibit possession of any firearm, but of a “regulated firearm.” Reading § 449(e) together with § 445(d)(1) indicates that the phrase, “who is in possession of a firearm as defined in § 445(d)(1)® and (ii) of this article,” refers to a person who is in possession of a regulated firearm and that the legislature used the word “and” because the definition of “regulated firearm” is the same in § 445(d)(1)® as it is in § 445(d)(1)(h). As seen above, section 445(d)(1) lists subsections (i) and (ii) in the disjunctive.
 

 The legislative history also indicates that the section was not intended to require a previous conviction of both a crime of violence and a felony. Section 449(e) is part of the Responsible Gun Safety Act of 2000.
 
 Melton
 
 sets out the relevant portion of the Bill Analysis of House Bill 279, the Maryland House of Delegates’ version of that act:
 

 
 *380
 
 The bill creates a new felony and a five-year mandatory minimum term of imprisonment for a person who illegally possesses a firearm and
 
 has certain qualifying convictions for crimes of violence or certain controlled dangerous substances.
 

 * * *
 

 “IX.
 
 Mandatory Minimum for Certain Repeat Offenders
 
 The bill creates a new felony and a five year mandatory minimum term of imprisonment for a person who illegally possesses a regulated firearm (Article 27, § 445(d)(l)(i) and (ii)) if that individual and has been convicted of
 
 either: (1) a crime of violence; or (2) unlawful possession, distribution, or importation of a controlled dangerous substance (Article 27, § 286 and § 286A).
 

 Melton,
 
 879 Md. at 485, 842 A.2d 743 (some emphasis added).
 

 The Bill Analysis for Senate Bill 211, the Senate’s version of the Responsible Gun Safety Act of 2000, similarly provides:
 

 The bill establishes a felony that provides a 5 year minimum mandatory term of imprisonment for a person who illegally possesses a firearm and who was previously convicted of
 
 a crime of violence or certain serious controlled dangerous substances violations.
 

 * * 3«
 

 “IX.
 
 Mandatory Minimum for Certain Repeat Offenders
 
 The bill establishes a felony that provides a 5 year mandatory minimum term of imprisonment for a person who illegally possesses a firearm (Article 27, § 445(d)(l)(i) and (ii)) if that individual has previously been convicted of
 
 either: (1) a crime of violence; (2) a felony; or (8) unlawful possession, distribution, or importation of a controlled dangerous substance (Article 27, § 286 and § 286A).
 

 (emphasis added).
 

 The language of the revised statute also supports the view that the legislature intended § 449(e) to apply to a person previously convicted of either a felony or a crime of violence. Construing the statute as intending to include prior convic
 
 *381
 
 tions of crimes of violence or serious drug crimes suggests that a simpler way of establishing penalties for those offenses would be to prohibit possession of regulated firearms for one who has been convicted of an enumerated offense. That is what the revisers did. Md.Code (2003), Public Safety Article, sec. 5-133(c) provides:
 

 (1) A person may not possess a regulated firearm if the person was previously convicted of:
 

 (1) a crime of violence; or
 

 (ii) a violation of § 5-602, § 5-603, § 5-604, § 5-605, § 5-606, § 5-607, § 5-608, § 5-609, § 5-612, § 5-613, or § 5-614 of the Criminal Law Article.
 

 (2) A person who violates this subsection is guilty of a felony and on conviction is subject to imprisonment for not less than 5 years, no part of which may be suspended.
 

 (3) A person sentenced under paragraph (1) of this subsection may not be eligible for parole.
 

 (4) Each violation of this subsection is a separate crime.
 

 The revisor’s note states: “This section is new language derived
 
 without substantive change
 
 from former Art. 27, §§ 449(e) and 445(d), (e), and, except as it related to the transfer of regulated firearms, (a).” (Emphasis added). Sections 5-602, § 5-603, § 5-604, § 5-605, § 5-606, § 5-607, § 5-608, § 5-609, § 5-612, § 5-613, and § 5-614 of the Criminal Law Article are essentially the statutes that replaced §§ 286 and 286A.
 

 We conclude, therefore, that Article 29, § 449(e) is applicable to defendants who have previously been convicted either of a felony or a crime of violence. The trial court properly sentenced appellant pursuant to that statute.
 

 JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.
 

 Dissenting opinion by DAVIS, Judge.
 

 Respectfully, I must dissent.
 

 
 *382
 
 At the outset, as the majority points out (op. at 380-81, 851 A.2d at 621-22) Md.Code (1957, 1996 RepLVol., 2001 Cum. Supp.), art. 27, § 449(e), has been repealed and re-codified as § 5-133(c) of Md.Code (2003), Public Safety art. (P.S.). The Revisor’s note states:
 

 The Public Safety Article Review Committee noted in Ch. 5 for consideration by the General Assembly, that the meaning of the reference in former Art. 27, § 449(e) to a person “who is in illegal possession of a firearm as defined in § 445(d)(1)© and (ii) of [Art. 27]” was unclear. Former Art. 27, § 445(d)(1)© and (ii) prohibited a person who has been convicted of a crime of violence or any violation classified as a felony in this State from possessing a regulated firearm. The General Assembly may wish to clarify the meaning of former Art. 27, § 449(e), which is revised in subsection (c) of this section.
 

 I certainly do not take issue with the well-settled precepts of statutory construction reiterated by the majority, including the requirement that a statutory scheme be analyzed in its entirety; that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory; and that the construction not have an illogical result.
 
 Degren v. State,
 
 352 Md. 400, 418, 722 A.2d 887 (1999);
 
 State v. Pagano,
 
 341 Md. 129, 134, 669 A.2d 1339 (1996). Moreover, the repeal of § 449(e) of Article 27 and its re-codification in P.S. § 5-133 indicate that the legislature did not intend that the mandatory sentencing imperative of § 449(e) require a conviction under both § 445(d)(1)© and (ii).
 

 Notwithstanding, the Court of Appeals, in
 
 Price v. State,
 
 378 Md. 378, 387-88, 835 A.2d 1221 (2003), recently explicated the importance of beginning with the plain language of the statute in divining legislative intent:
 

 The chief goal of statutory interpretation is to discover the actual intent of the legislature in enacting the statute, and the legion of cases that support this proposition need not be repeated here. In fact, all statutory interpretation begins, and usually ends, with the statutory text itself,
 
 Marriott
 
 
 *383
 

 Employees v. MVA,
 
 346 Md. 437, 444-45, 697 A.2d 455, 458 (1997),
 
 for the legislative intent of a statute primarily reveals itself through the statute’s very words, Derry v. State,
 
 358 Md. 325, 335, 748 A.2d 478, 483 (2000). A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application.
 
 County Council v. Dutcher,
 
 365 Md. 399, 416-417, 780 A.2d 1137, 1147 (2001). In short, if the words of a statute clearly and unambiguously delineate the legislative intent, ours is an ephemeral enterprise. We need investigate no further but simply apply the statute as it reads.
 
 Derry,
 
 358 Md. at 335, 748 A.2d at 483;
 
 Kaczorowski v. City of Baltimore,
 
 309 Md. 505, 515, 525 A.2d 628, 633 (1987).
 

 In some cases, the statutory text reveals ambiguity, and then the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal.
 
 See Lewis v. State,
 
 348 Md. 648, 653-654, 705 A.2d 1128, 1130-31 (1998);
 
 Haupt v. State,
 
 340 Md. 462, 471, 667 A.2d 179, 183 (1995);
 
 Marriott,
 
 346 Md. at 445, 697 A.2d at 459.
 
 However, before judges may look to other sources for interpretation, first there must exist an ambiguity within the statute, i.e., two or more reasonable alternative interpretations of the statute. See Greco v. State,
 
 347 Md. 423, 429, 701 A.2d 419, 421 (1997). Where the statutory language is free from such ambiguity, courts will neither look beyond the words of the statute itself to determine legislative intent nor add to or delete words from the statute,
 
 see Gillespie v. State,
 
 370 Md. 219, 222, 804 A.2d 426, 427 (2002). Only when faced with ambiguity will courts consider both the literal or usual meaning of the words as well as their meaning in light of the objectives and purposes of the enactment. As our predecessors noted, “We cannot assume authority to read into the Act what the Legislature apparently deliberately left out. Judicial construction should only be resorted to when an ambiguity exists.”
 
 Howard Contr. Co. v. Yeager,
 
 
 *384
 
 184 Md. 503, 511, 41 A.2d 494, 498 (1945). Therefore, the strongly preferred norm of statutory interpretation is to effectuate the plain language of the statutory text.
 

 Id.
 
 at 387-88, 835 A.2d 1221 (emphasis added).
 

 From the above, there really is no ambiguity in the statute itself, but rather in the statutory scheme, as the majority explains. (Op. at 378, 851 A.2d at 620.) As I see it, the fact that the plain language represents the manner in which a sentence enhancement is determined in a criminal proceeding casts the provision in a light different from other matters, requiring an additional consideration. The majority opinion sets forth a quotation from
 
 Melton v. State,
 
 379 Md. 471, 842 A.2d 743 (2004), in which the Court of Appeals considered the heightened scrutiny to which a statute providing for an enhanced penalty must be subjected. A more expansive version of the text of the
 
 Melton
 
 quotation is instructive:
 

 The plain language of § 449(e) argument, urged on this Court by the State, appears to be directly at odds with this subsequent history. At best for the State, the language is ambiguous, and ambiguous units of prosecution and penalty provisions in criminal statutes, pursuant to the rule of lenity, must normally be construed in favor of the defendant.
 

 In discussing what the rule of lenity requires in the context of former Md.Code (1957, 1996 RepLVol., 1998 Supp.), Art. 27 § 286(d), this Court has stated that:
 

 an enhanced penalty statute, is highly penal and must be strictly construed so that the defendant is only subject to punishment contemplated by the statute. When doubt exists regarding the punishment imposed by a statute, the rule of lenity instructs that a court “not interpret a ... criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended.”
 
 Melgar v. State,
 
 355 Md. 339, 347, 734 A.2d 712, 716-17 (1999) (quoting
 
 White v. State,
 
 318 Md. 740, 744, 569 A.2d 1271, 1273 (1990)) (citations omit
 
 *385
 
 ted).
 
 See also Webster v. State,
 
 859 Md. 465, 481, 754 A.2d 1004, 1012 (2000) (stating that “ambiguity in a criminal penal statute, in accordance with the rule of lenity, ordinarily is to be construed against the State and in favor of the defendant”);
 
 McGrath v. State,
 
 356 Md. 20, 25, 736 A.2d 1067, 1069 (1999).
 

 In the case
 
 sub judice,
 
 there is no doubt that § 449(e), a statute which creates a mandatory minimum five-year sentence without the possibility of parole, fits within the definition of “an enhanced penalty statute.” As § 449(e) provides no definition of the term “violation,” and provides no specific direction as to the proper unit of prosecution, we hold that § 449(e) is ambiguous as to that point and accordingly construe § 449(e) narrowly. The fact that the plain language of § 449(e), as it existed at the time of the offense here at issue, leaves us nothing more than “a guess” as to which violation (the illegal possession or prior felony or both,
 
 see Price, supra
 
 at 387[, 835 A.2d 1221], as of the time of convictions in the case at bar)
 
 triggers the mandatory minimum sentence, requires that the rule of lenity be applied.
 

 Id.
 
 at 488-89, 842 A.2d 743 (emphasis added).
 

 Clearly, under the rule of lenity, any ambiguity in the language of a criminal statute must be construed against the State and in favor of the defendant. Not only must the statute be strictly construed to insure that a defendant is only subject to punishment contemplated by the statute, it must serve to put the defendant on notice as to what conduct violates the law and therefore makes him or her criminally responsible.
 
 See Finucan v. Md. Bd. of Physician Quality Assurance,
 
 380 Md. 577, 846 A.2d 377 (2004), and
 
 Galloway v. State,
 
 365 Md. 599, 781 A.2d 851 (2001) (setting forth requirements of notice in criminal statute and compendium of decisions on the subject).
 

 Notwithstanding that the eloquent, syllogistic analysis set out in the majority opinion and the re-codification of § 449(e) likely reflect the true intention of the legislature, requiring
 
 *386
 
 one charged with a crime to engage in such a legalistic exercise in order to determine his or her culpability imposes an undue burden on the defendant. A criminal statute must put the defendant on notice as to what conduct is proscribed.
 

 Judge Adkins, writing for the Court of Appeals in
 
 Kaczorowski v. Mayor and City Council of Baltimore,
 
 309 Md. 505, 525 A.2d 628 (1987), considered competing canons in divining statutory intent:
 

 We are faced with a battle between contending canons of construction. Just as in the science of Physics every action has an equal and opposite reaction, so it seems that every canon of statutory construction has an equal and opposite canon. Indeed, it has been suggested that the canons of construction should be abandoned because they “obscure the factors actually at work in the construction of statutes.” Sykes,
 
 A Modest Proposal for a Change in Maryland’s Statutes Quo,
 
 43 Md.L.Rev. 647, 666 (1984). Instead, this Court “should turn ... to the task of explaining more forthrightly its reasons for adopting a particular construction in an individual case.”
 
 Id. at
 
 667. Nevertheless, the canons have long been with us. To a considerable extent they are founded on both logic and common sense. Indeed, objections to them seem to be based more on the way in which they have been used, rather than on their content. But properly used, they afford an opportunity for principled decision making, as opposed to ad hoc judicial legislation. It is sound policy for a court to recognize legislative preeminence, subject to constitutional restraints, when legislation is involved. We shall apply the canons here, and at the same time attempt to give forthright explanations for the result we reach.
 

 Id.
 
 at 512, 525 A.2d 628 (footnotes omitted).
 

 On October 30, 2001, the plain language of a Maryland statute put appellant on notice that he could be subjected to enhanced punishment if two preconditions were established, i.e., that he had previously been convicted of a crime that was classified as a felony and that it was a crime of violence.
 
 *387
 
 While rules of statutory construction require giving effect to legislative intent, when the plain language fails to give notice to the defendant that the proscribed conduct can subject the defendant to an enhanced penalty, I believe the plain language must prevail.
 

 Although quite apart from the question of whether § 449(e) of art. 27 should be upheld, the fact that the trial judge felt compelled by law to impose the mandatory five-year sentence, without parole, on a fifty-seven-year-old man with a relatively clean criminal record, obviously caused him some consternation:
 

 THE COURT: I cannot change the law to make people feel better.
 

 THE COURT: I know, but I cannot do anything about this. I did not write these laws.... This is not a good situation. I mean, the man—how old is the man?
 

 [DEFENSE COUNSEL]: Fifty-seven.
 

 THE COURT: He is older than me.... And it is an uncomfortable situation.
 

 [DEFENSE COUNSEL]: It is not just his age. I mean, it is everything about this situation—
 

 THE COURT: I know.
 

 [DEFENSE COUNSEL]:—compared to some gang-banger who is going to get off—
 

 THE COURT: I know, I mean, it drives you nuts.
 

 [DEFENSE COUNSEL]:—because they do not take responsibility.
 

 In addition to his apparent lack of an extensive criminal background, according to counsel, appellant had worked at General Motors for thirty-five years and was retired. He reportedly told the officer who arrested him, “I did a really dumb thing.”
 

 Deference is generally accorded trial judges who see defendants in person and accordingly form judgments regarding the
 
 *388
 
 proper disposition in a given case. In the case
 
 sub judice,
 
 the judge remarked: “This is not a good situation,” “He is older than me.... And it is an uncomfortable situation,” and “I know, I mean, it drives you nuts,” after appellant’s counsel observed that appellant was not “some gang-banger who is going to get off.”
 

 The issue of the trial judge’s dilemma is not before this Court, but that dilemma underscores the necessity that, in implementing a statute requiring an enhanced penalty, more specifically, a mandatory sentence without parole, it is imperative that we (the judicial system) get it right. Viewing the propriety of the mandated sentence from the perspective of the trial judge’s consternation (as he is in the best position to evaluate appellant’s entire history, including the predicate convictions for the enhanced penalty), exercise of prosecutorial discretion, ranging from placing the case on the stet docket to proceeding only on the current charges, might well have been the most appropriate way to obviate the apparent dilemma. At this juncture, assuming the majority decision is not disturbed, executive clemency may well be appellant’s only resort.
 

 [1]
 

 . In her opening, defense counsel told the jury:
 

 Now, you can see Mr. Stanley is not some young guy that would be hanging on the corner. He worked 35 years for General Motors. He is retired. He is here with his wife today.
 

 
 *367
 
 She told the jury that when the police came, appellant cooperated and gave the gun to the police. She said,
 

 He said officer, I am sorry, I did a really dumb thing. You know, here is the gun, take it away, I don’t want it, and for that, he is being punished. That is why at the end of this case, I want you to look at Mr. Stanley and I want you to find him not guilty of this crime. In her closing, defense counsel said:
 

 [Appellant] did the right thing, and he should not be punished for it, and he is going to be punished for it unless you find him not guilty. The jury in the State of Maryland are the judges of the law and the facts. You are the law.
 

 In fact, during its deliberations, the jury sent a note asking whether, if they found appellant guilty, he could be offered probation before judgment.
 

 [2]
 

 .
 
 Carter v. State,
 
 374 Md. 693, 824 A.2d 123 (2003).
 

 [3]
 

 .
 
 Brown v. State,
 
 719 So.2d 882 (Fla.1998).
 

 [4]
 

 .
 
 State v. Lee,
 
 266 Kan. 804, 977 P.2d 263 (1999).
 

 [5]
 

 . After the trial court agreed that the jury had to learn of the prior conviction, the following occurred:
 

 THE COURT: I cannot change the law to make people feel better.
 

 [DEFENSE COUNSEL]: I do not want to feel better; I just want to feel safe.
 

 THE COURT: I know, but I cannot do anything about this. I did not write these laws ... This is not a good situation. I mean, the man— how old is the man?
 

 [DEFENSE COUNSEL]: Fifty-seven.
 

 THE COURT: He is older than me.... And it is an uncomfortable situation.
 

 [DEFENSE COUNSEL]: It is not just his age. I mean, it is everything about this situation—
 

 THE COURT: I know.
 

 [DEFENSE COUNSEL]:—compared to some gang-banger who is going to get off—
 

 THE COURT: I know, I mean, it drives you nuts.
 

 [DEFENSE COUNSEL]:—because they do not take responsibility.
 

 [6]
 

 . Unless otherwise noted, references are to Md.Code (1957, 1996 Repl. Vol., 2001 Cum.Supp.).